Arthur J. Abrams, J.
Petitioner and respondent were married in New Mexico on February 24, 1965. There is one issue of the marriage, Robert Scott Fayerman, born November 19, 1965. The parties entered into a child custody agreement on April 15, 1969 which was subsequently incorporated into their Arizona divorce granted on May 21, 1969. The child custody agreement provided that respondent should have visitation with the child during the child’s summer vacation for an extended period of time. The details of this visitation were to be worked out at a later time. This was accomplished in New York on August 26, 1969. There the parties agreed that summer visitation was to commence at the close of the child’s school year in June and continue until the 31st day of August. The respondent was also to be allowed to visit with the child in the State of the child’s residence for two continuous days whenever the respondent chose and to take the child out of the State of his residence for the Jewish holiday of Hanukkah.
The matter first came to the attention of the Suffolk County Family Court as a result of a Uniform Support of Dependents Law petition filed by the petitioner herein in the Superior Court of the State of Arizona in and for the County of Pima on May 25, 1971. On June 30, 1971, the Honorable Everett E. Schrader of the Suffolk County Family Court ordered the respondent to provide $20 weekly support payments for his son, Robert, commencing July 2, 1971. At that time, the court file reveals that Judge Schrader also directed the initiating court (Arizona) to make some arrangements to permit respondent to visit with his son.
Over the years, testimony has been taken here in New York of the respondent and in Arizona of the petitioner. Eventually, *692 the case came to the attention of the undersigned and in October of 1976, we indicated that the order would be reduced to $10 per week retroactively to July 2, 1971. We further determined that support would be increased only upon our satisfaction that visitation had, in fact, been made available. In March of 1976, we restated the above and ordered that all support moneys be held in escrow pending visitation.
The Pima County Attorney, on behalf of the petitioner, has taken umbrage with our decision and has submitted a memorandum of law in support of his contention that this court does not have the authority to withhold support moneys as stated aforesaid.
As in all cases under the Uniform Support of Dependents Law (Domestic Relations Law, art 3-A), neither the initiating nor receiving court has had both parties before it. Therefore, a determination as to the parties’ veracity is especially difficult to gauge. To put it succinctly, the parties’ testimony herein could hardly be at greater variance. Who did what to whom during the various visitations is most unclear; however, that respondent has not had his rights of visitation as set forth in the divorce decree and later modified in the same year, 1969, has been established.
The thrust of the petitioner’s contention is that the Uniform Support of Dependents Law is purely a statutory creation and as such of so specialized a nature as to be limited to support and nothing else. Were this to be the case, a mother could circumvent a valid divorce decree providing for visitation and support by merely relocating to an adjoining county or State and still expect a court to enforce the support provisions of the decree. A strict interpretation of the Uniform Support of Dependents Law would encourage such conduct, a phenomenon which we find to be totally repugnant to any concern for fair play.
A recent line of New York cases has held that in a uniform support of dependents proceeding where there is no danger to the welfare of the child or the mother upon visitation, a denial of such visitation may justify suspension of support payments (Abraham v Abraham, 44 AD2d 675; Matter of Wheeler v Wheeler, 74 Misc 2d 1021; Matter of Sandra B. v Charles B., 85 Misc 2d 633; Matter of Fleischer v Fleischer, 25 AD2d 901).
The Pima County Attorney cites many cases, however, describes Matter of De Filipo v De Filipo (45 AD2d 710) as *693 controlling. There the respondent father had made an initial application for visitation with the child before the New York court. The Second Department Appellate Division held that such a de novo determination should be made before the court where the child resides, not as part of a uniform support of dependents proceeding. This is not the instant case. The divorce herein provided that father with summer visitation for an extended period of time. The exact dates and times of such visitation were later determined in an amended custody agreement acknowledged by both parties. The court is not being asked to determine visitation but merely to enforce existing rights.
Accordingly, respondent is ordered to pay $20 per week to the Suffolk County Probation Department commencing the first Friday after service with notice of entry of the order to be entered herein. All moneys are to continue to be held in escrow until actual visitation takes place. Respondent is to be entitled to visit with the child each and every summer commencing with the close of the school year in 1977 and continuing until the 31st day of August, 1977. Respondent is further ordered to deposit $1,000 each and every year with the Suffolk County Probation Department to ensure that the child is returned to the petitioner at the end of the summer visitation for that year. Immediately after such visitation takes place, the support moneys shall be released to the petitioner and upon the return of the child to his mother after completion of his summer visit, the $1,000 shall be returned to the respondent. In addition, respondent is to pay for the cost of transporting the child to and from Arizona for the visitation.