OPINION OF THE COURT
Raymond E. Cornelius, J.
This is a proceeding pursuant to the Uniform Support of Dependents Law (Domestic Relations Law, art 3-A) seeking child support for the two minor children of the petitioner, Jeanne M. Sorbello, and the respondent, John D. Cook. The case raises the issue of whether support pursuant to the Uniform Support of Dependents Law may be conditioned upon visitation and other related rights asserted by the natural father, and the further novel issue as to the effect upon that general question of section 34-a of the Domestic Relations Law, which became effective on July 6, 1977.
The petitioner and respondent were married on July 24, 1963, and, thereafter, a son was born in 1965 and a daughter in 1967. On January 9, 1975, a separation agreement was entered into by the parties, which provided that the respondent pay child support in the sum of $200 each month ($100 per child), and custody was given to the natural mother, the respondent was permitted extensive visitation rights. Subsequently, the petitioner informed respondent of her intention to move from the State of New York to the State of California with the two minor children. On January 22, 1976, the parties entered into an amended separation agreement, based upon the anticipated relocation, which provided for expansive visitation during school vacation periods and a requirement that the petitioner provide the summer vacation schedule and, also, liberal visitation rights when the respondent was in the State of California, upon 15 days’ notice. In addition, the petitioner agreed to notify the respondent of the exact address, whereabouts and telephone number of herself and the children at all times, and to keep respondent informed of the *1000 health and educational status of the children. Also, she was required to generally promote and advance a relationship between the children and their natural father, which would include the encouragement of correspondence between the children and their father.
On January 22, 1976, a divorce decree was entered by the Supreme Court, State of New York, which incorporated, but did not merge, the two separation agreements.
In August of 1976, this proceeding was commenced through the Superior Court, Contra Costa County, California, by complaint which alleged that the respondent had failed to pay the $200 per month child support since January, 1976, and requesting enforcement of the support provisions of the divorce decree. The answer of the respondent set forth an affirmative defense, claiming that the petitioner had violated the terms of the amended separation agreement by failing to notify the respondent of the address or whereabouts of the children or otherwise communicating, and, as a result, the respondent had not had any contact with his children.
In an affidavit filed in response to the answer, the petitioner maintained that the respondent was aware at all times of the address where she and the children could be reached, and that prior to leaving Rochester in January of 1976, she had provided the respondent with a temporary California address and telephone number, hereafter referred to as the "Truisi” residence. Furthermore, she alleged that correspondence had been sent or forwarded by the respondent to the Truisi residence several times during the year 1976, and that the correspondence had been received. However, in answer to interrogatories filed by the attorney for the respondent on August 2, 1977, the petitioner in an affidavit verified August 24, 1977, stated that she and the children had resided at the "Truisi” residence for approximately two weeks after arriving in California on February 3, 1976, and, thereafter, from February, 1976 to September, 1976, had resided at 5539 Montana Drive, Concord, California, and from September, 1976 to the time this affidavit was filed on August 24, 1977, had resided at 1475 Willcrest Drive, Concord, California. She also admitted that she had failed to comply with the terms of the separation agreement because of respondent’s failure to provide support.
During the pendency of this proceeding, a temporary order of support was granted, requiring the respondent to pay a total of $100 per month to the Support Bureau of Monroe *1001 County Family Court, to be held in escrow, and the respondent has fully complied with that temporary order. In addition, the respondent fully acknowledges his responsibility to pay support in the amount of $200 per month for his children, but requests that the payment of support be conditioned upon compliance by the petitioner with the provisions of the modified support agreement, as incorporated into the divorce decree.
During the trial of this matter, it was established that the respondent has had minimal contact with his children since the petitioner moved to the State of California, and that he does not know the present address or whereabouts of his children. During the period of time the children were residing in New York, the respondent had a full relationship with them, including frequent visitation. However, since moving to California, the respondent has failed to receive any correspondence from his children, and any letters or cards sent by him have not been acknowledged or have been returned.
Contrary to the assertion by the attorney for the petitioner, there is precedent for permitting an order of support pursuant to the Uniform Support of Dependents Law to be conditioned upon visitation rights in cases where deprivation of those rights are not required by some concern for the welfare of the natural mother or child. (Matter of Fleischer v Fleischer, 25 AD2d 901; Goodwin v Fayerman, 88 Misc 2d 690; Matter of Sandra B. v Charles B., 85 Misc 2d 633; Matter of Wheeler v Wheeler, 74 Misc 2d 1021.)
Indeed, in Matter of Fleischer v Fleischer (supra), the appellate court applied the authority of Family Court to make provision for visitation in support proceedings, under article 4 of the Family Court Act, to a proceeding for support under the Uniform Support of Dependents Law. Other provisions of the Family Court Act have likewise been interpolated into the Uniform Support of Dependents Law, although the latter fails to make any specific provision. For example, a blood test may be ordered, (Matter of Schneider v Schneider, 72 Misc 2d 423) and similarly, counsel fees may be awarded in a proceeding pursuant to article 3-A of the Domestic Relations Law (Matter of Murdock v Settembrini, 21 NY2d 759). Conversely, in Martin v Martin (58 Misc 2d 459), which contains an excellent review of those cases expanding or declining to expand the New York Uniform Support of Dependents Law under varying circumstances, the court refused to interpret subdivision (c) of *1002 section 466 of the Family Court Act, which conferred upon resident ex-wives the power to enforce support provisions of a foreign divorce decree, as part of the Uniform Act.
In Goodwin v Fayerman (supra), the court found that the natural father had not been allowed his rights of visitation as set forth in the divorce decree, and conditioned payment of support moneys upon visitation of the child. The Pima County Attorney of the State of Arizona, where the mother had relocated, had contended that Family Court was without authority to so withhold the support moneys. In answer, the court held, in part, as follows (p 692): "The thrust of the petitioner’s contention is that the Uniform Support of Dependents Law is purely a statutory creation and as such of so specialized a nature as to be limited to support and nothing else. Were this to be the case, a mother could circumvent a valid divorce decree providing for visitation and support by merely relocating to an adjoining county or State and still expect a court to enforce the support provisions of the decree. A strict interpretation of the Uniform Support of Dependents Law would encourage such conduct, a phenomenon which we find to be totally repugnant to any concern for fair play.”
Nevertheless, the attorney for the petitioner in the instant case cites section 34-a of the Domestic Relations Law, which was added by chapter 379 of the Laws of 1977 and became effective July 6, 1977. This section provides, in pertinent part, that "where the petitioner and respondent are residents of or domiciled or found in different counties within the State of New York” (emphasis added), the courts of either the initiating or responding county have the power "to make reasonable provisions for visitation”. Therefore, counsel argues that Family Court is without authority to make provision for visitation in a Uniform Support of Dependents Law proceeding where one of the parties is outside the State of New York.
The memoranda submitted to the Governor, prior to signing into law section 34-a of the Domestic Relations Law, indicate that the law was intended to confer upon the court an authority which had not previously existed, namely, the authority to allow visitation privileges in a Uniform Support of Dependents Law proceeding. The fact that the Legislature did not include a provision containing that authority in cases involving parties residing, or otherwise located, outside of New York, is not significant. Such a unilateral provision would not *1003 be effective unless enacted by the other jurisdictions which are also parties to the reciprocal act. Therefore, the absence of such a provision involving out-of-State petitioners should not necessarily indicate a legislative intent to exclude the court’s authority in those cases. As already noted, the absence of such power has not deterred the courts from exercising jurisdiction in the past. However, in absence of any statutory authority, there is also logical reason for courts to condition support payments upon visitation rights in certain cases involving out-of-State petitioners.
In the instant case, as with some of the authorities cited above (e.g., Matter of Wheeler v Wheeler, 74 Misc 2d 1021, supra), a separation agreement had been entered into by the parties, which not only provided for child support, but also extensive visitation rights and other similar rights to be accorded the natural father. Thereafter, the provisions of that agreement were incorporated into a divorce decree, which the wife has sought to enforce by a proceeding pursuant to the Uniform Support of Dependents Law. In fact, the visitation or custody provisions of both the original separation agreement and the amended agreement were part of mutual covenants, which included child support to be paid by the respondent. It should also be emphasized that the two separation agreements in the instant case were entered into in the State of New York, and the divorce decree was granted by the Supreme Court of the State of New York.
Therefore, this court holds that section 34-a of the Domestic Relations Law does not preclude the ability of Family Court to condition the payment of child support upon visitation and other similar rights in those instances where an out-of-State petitioner is seeking to enforce the support provisions contained or incorporated into a valid decree of divorce, which also contains mutual covenants for visitation or other similar rights. If this court were to hold otherwise, a mother could circumvent that part of a valid divorce decree to which she did not wish to adhere, and at the same time enforce the support provisions of the decree, by simply relocating in another State. On the other hand, in those instances where support and/or visitation have not previously been determined and the respondent seeks de novo visitation or other similar rights, the court should decline to exercise jurisdiction, and limit itself to the issue of child support. (Matter of De Filipo v De Filipo, 45 AD2d 710.)
*1004 The court directs that the respondent commence paying the sum of $200 per month to the Support Bureau of Monroe County Family Court, to be held in escrow together with the moneys already collected pursuant to the temporary order of support, and to be paid to the initiating court upon the occurrence of the two following conditions: (1) The petitioner is to provide respondent with the current address, whereabouts, and telephone number in the State of California of herself and the two minor children, together with a report concerning the educational and health status of the children. (2) The petitioner will supply the respondent with the 1978 summer vacation schedule for the children, and the respondent shall exercise his right of visitation, as set forth in the amended separation agreement.
In the event that the respondent does not exercise his rights of visitation during the. slimmer of 1978, but the petitioner otherwise complies with the two afore-mentioned conditions, the moneys collected and held in escrow may be paid over to the initiating court on September 1, 1978, and the current support payments every month thereafter. If the petitioner fails to adhere to the two conditions set forth in this decision, respondent may apply to this court for a return of the moneys held in escrow. In addition, if the petitioner complies with the two afore-mentioned conditions, but thereafter fails to adhere to the terms and conditions of the separation agreements, as incorporated in the decree, the respondent may apply to this court for modification of the order.