LAWRIE M. GRIFFIN, Appellant, v RICHARD L. GRIFFIN, Respondent.

Second Department, November 1, 1982

##### APPEARANCES OF COUNSEL

*David J. Gilmartin, County Attorney* (*Lewis A. Silverman* of counsel), for appellant.

*Anthony Salvatore, P.C.* for respondent.

##### OPINION OF THE COURT

GIBBONS, J.

This case presents for resolution the question as to whether the Family Court, in a proceeding brought pursuant to the Uniform Support of Dependents Law (Domestic Relations Law, art 3-A), to recover child support under a judgment of divorce rendered in the State of Arizona, may properly vacate a prior temporary support order, cancel all arrears and order all moneys deposited with the Support Collection Unit to be returned to respondent father by reason of the former wife's refusal to provide the court with

a program for reasonable visitation between father and child.

The petitioner wife and the respondent husband were married and domiciled in Arizona where their only child was born on March 17, 1972. The marriage was terminated on April 7, 1978 by a divorce decree entered in the Arizona Superior Court, by which the petitioner was awarded the custody of the child "with reasonable visitation rights" to the respondent. It was also provided that the respondent make monthly child support payments of $220 commencing on March 1, 1978. Thereafter, the respondent remarried and established his residence in Suffolk County, New York, in March of 1979. The petitioner and the child continued to reside in Arizona.

On June 4, 1979 petitioner filed a complaint for child support in the Arizona Superior Court, pursuant to the Revised Uniform Reciprocal Enforcement of Support Act of that State, alleging arrears of child support of approximately $330. A hearing was thereafter held in the Family Court of Suffolk County on October 19, 1979. (Domestic Relations Law, art 3-A.)

In addition to respondent's testimony concerning his financial ability to comply with the support provisions of the decree, he testified that his attempts to arrange visitation with his son were fruitless. His offer to pay the transportation costs for the child to and from New York was rejected by the petitioner who refused to discuss the matter with him. He testified that he was prevented from having a telephone conversation with his son since the number had been changed and that he was forced to communicate with his son by forwarding a letter to his mother in Arizona who took the letter to the child's school where it was read to him by his teacher. He unilaterally reduced the monthly payments to $110 per month rather than the $220 required by the decree.

At the conclusion of the hearing, the court, based on respondent's financial circumstances, expressed its view that the sum of $220 per month for child support should be continued. At that stage in the proceeding, respondent claimed that insufficient weight had been given to the

issue of petitioner's refusal to permit visitation and that, in order to cross-examine petitioner on this question and about her financial circumstances, he should be permitted to serve upon petitioner written interrogatories concerning visitation and her financial condition. The petitioner's application was granted and an order for temporary support in the amount of $220 per month was entered.

By her verified responses to the interrogatories, dated January 14, 1980, the petitioner, in addition to disclosing her income and expenses, stated, *inter alia,* with respect to visitation:

"Respondent may visit any time, provided he reestablishes contact with Justin and gives me reasonable notice for scheduling the visit.

"Justin is out of school on May 30, 1980. He will have summer recess until August 28, 1980. I suppose any prearranged visit during this time frame, as convenient for all parties involved.

"I think the Respondent should contact me, so we can discuss arrangements. We should have direct communication about the matter. I would like to know where he will be going, with whom, for how long, via what transportation, who will watch Justin during the day and what assurance I will have that the Respondent will send Justin home."

There then followed a request by the court on January 21, 1980 to the County Attorney to correspond with the petitioner and inform her that visitation in New York would be during the Easter school recess and for a four-week period during the summer vacation, that the respondent would pay the costs of the child's transportation and deposit $800 in escrow to insure the return of the child to the petitioner. The court also instructed the County Attorney to inform the petitioner that such visitation would be allowed only as long as the respondent continued to make the support payments, and, further, that if the petitioner did not permit reasonable visitation, the court would be "willing to explore the possibility of cancelling support in toto".

The matter came on again before the court on March 21, 1980, and, as the result of petitioner's negative response

concerning the proposed visitation, the court again instructed the County Attorney to inform her that, although it was then too late for an Easter vacation visitation, the court insisted that there be a 30-day summer visitation beginning in June after the school recess commences, and that, if such visitation is granted, it will be done on the condition that the respondent deposit the $800 in escrow to insure the return of the child to the petitioner; that he continue to pay the sum of $220 for child support monthly; and, with the further proviso that such payments be deposited in escrow with the probation department "to ensure that [petitioner] permit the visitation ordered by this Court". The court also instructed the County Attorney to inform the petitioner that if she "fails to cooperate with this Court and fails to make the child available, I will very very seriously consider dismissing the petition herein, cancelling any support order, and ordering any monies which I am directing be held in escrow, returned to [the respondent] on the basis of her lack of cooperation".

When the case came before the court on June 26, 1980, and it was established that the petitioner was unwilling to accept the court's proposals for the respondent's visitation with his son, the court vacated the temporary order of support, canceled the arrears, if any, and directed that all moneys on deposit with the Support Collection Unit be returned to the respondent forthwith.

This direction was made over the objection of the County Attorney, who contended that the Family Court was without jurisdiction in a proceeding under the Uniform Support of Dependents Law (Domestic Relations Law, § 34-a) to condition child support upon the right to visitation where both parties do not reside within the confines of the State of New York.

Essentially, as stated in section 30 of the Domestic Relations Law, the legislative purpose in the enactment of the Uniform Support of Dependents Law was to establish a practical remedy "to secure support in civil proceedings for dependent spouses and children from persons legally responsible for their support". The statute is part of an effort by the State to establish and participate in a reciprocal interstate remedy to enforce the collection of spousal and

children's support "within and without the State and to provide a procedure for enforcement thereof against persons residing in other States and territories of the United States having substantially similar reciprocal laws" (*Landes v Landes,* 1 NY2d 358, 363).

The only reference to the court's authority to "*make reasonable provisions for visitation*" as a part of its judicial function under article 3-A is that which is contained in section 34-a of the Domestic Relations Law which provides as follows: "Powers of court; visitation. In any proceeding to compel support of a dependent pursuant to the applicable provisions of this article, *where the petitioner and respondent are residents of or domiciled or found in different counties within the state of New York,* the courts of either the initiating county or responding county shall have the *power,* in addition to the powers granted by section thirty-four of this article, *to make reasonable provisions for visitation of a child or children of the petitioner or respondent* or for the visitation of a child or children otherwise in the care or custody of the petitioner and for whom support is the obligation of the respondent." (Emphasis added.)

With respect to its power to provide for visitation, the statute is limited to application only in intrastate proceedings where both parents are residents or domiciliaries of different counties within this State. It should be noted, however, that where the terms of visitation have already been fixed by virtue of a prior order or judgment, it is the settled rule that the New York Family Court may properly, in a proceeding under the Uniform Support of Dependents Law, condition the continued payment of support upon petitioner's compliance with the respondent's free and uninhibited right of visitation, as so provided therein (*Matter of Giacopelli v Giacopelli,* 82 AD2d 806; *Sorbello v Cook,* 93 Misc 2d 998; *Goodwin v Fayerman,* 88 Misc 2d 690).

It is also well-settled, however, that absent such judgment or order fixing the terms of visitation, and where the petitioner is neither a resident nor a domiciliary of this State, and is the custodial parent with whom the child resides, the New York Family Court lacks jurisdiction to

*de novo* make reasonable provisions for child visitation. In *Matter of De Filipo v De Filipo* (45 AD2d 710), a case where the custodial parent resided in Florida with the two children of the parties, and the respondent applied for a *de novo* determination for visitation in the New York Family Court, this court, in vacating a stay of child support payments " 'to such time as the petitioning court works out and establishes a meaningful order of visitation' ", held as follows (p 711): "Respondent may apply for visitation rights, if he be so advised, to the Florida court which has jurisdiction of the child * * * we are of the opinion that the award of child support should not have been stayed dependent upon a later determination of visitation rights in Florida. Additionally, we note that under the circumstances disclosed by the record the best interests of these children of tender years require that application for visitation rights on behalf of respondent be made before the Florida court which has jurisdiction of the children."

On this record, we find that the cancellation of arrears, the denial of all future child support, and the return of the moneys deposited with the Support Collection Unit were extreme, premature and contrary to the interests of the child. The Family Court should have adjudicated the question of arrears, and, since the evidence in relation to the financial condition of both parties had been submitted to the court, it should also have made a determination on the merits of the amount of child support to be paid by the respondent.

Inasmuch as the child is not within the jurisdictional limits of the New York Family Court, a court-ordered right of visitation is not now obtainable in this State. If, however, the respondent procures such adjudication in a court of the State wherein the child resides, a failure to comply with such order, on the part of the petitioner, may provide a basis for the drastic relief of suspension of support payments and a return of the support money in escrow under the rule expressed in *Matter of Giacopelli v Giacopelli (supra)*, *Sorbello v Cook (supra)* and *Goodwin v Fayerman (supra)*.

Accordingly, under the circumstances of this case, the order of the Family Court entered July 28, 1980, should be

reversed and the matter remanded to that court to (1) adjudicate the amount of arrears, if any; (2) determine, on the merits, the amount of monthly child support to be paid by the respondent; (3) direct that respondent restore to the court's escrow account the amount of moneys heretofore returned to him and to continue to deposit the monthly support payments, as hereafter determined by the court, commencing from the date to be fixed by its order; and (4) direct the clerk of the Family Court to pay to the petitioner, from said escrow account, the amount of accrued arrears of child support, as so determined, computed from the date to be fixed by its order.

Petitioner's request for a direction to the Family Court to amend the petition so as to seek registration of the foreign support order pursuant to section 37-a of the Domestic Relations Law and to direct the clerk of the court to register the same, *nunc pro tunc,* constitutes matters raised for the first time on appeal and should properly be applied for at the trial court level.

LAZER, J. P., GULOTTA and BRACKEN, JJ., concur.

Order of the Family Court, Suffolk County, entered July 28, 1980, reversed, without costs or disbursements, and matter remitted to the Family Court for further proceedings consistent herewith.