OPINION OF THE COURT
Sara P. Schechter, J.
In this proceeding initiated pursuant to article 3-A of the Domestic Relations Law (Uniform Support of Dependents Law) by the South Carolina Department of Social Services on behalf of the maternal grandmother of respondent’s 10-year-old son, support is sought from respondent in accord with the terms of a divorce decree entered in the Circuit Court of Shelby County, Tennessee, on December 16,1976.
Respondent moves to dismiss the petition on the grounds that (1) petitioner lacks capacity to sue; (2) collateral estoppel; and (3) lack of a proper party, to wit, the mother of the child for whom support is sought. Alternatively, respondent requests suspension of his support obligation pending enforcement of his visitation rights. Respondent also cross-moves for custody of his son.
*650 The motion to dismiss and cross motion for custody are denied. The application for suspension of the support obligation pending granting of visitation is granted.
The application for dismissal based on lack of capacity to sue must be denied since the term “petitioner” is defined in the Uniform Support of Dependents Law (hereinafter USDL) as “each dependent person for whom support is sought in a proceeding instituted pursuant to this article.” (Domestic Relations Law, § 31, subd 5.) For USDL purposes, therefore, the true petitioner is the child himself, and we do not reach the question of whether either the South Carolina Department of Social Services or the child’s grandmother who appears to have de facto custody of Jeffery, would have standing to initiate a proceeding pursuant to section 422 of the Family Court Act.
The application for dismissal on the grounds of collateral estoppel must be denied, even though respondent’s support obligation has twice previously been suspended, as is evidenced by the court’s own records in cases bearing docket numbers U-3559/78 and U-1639/88. The petition currently before the court states no claim for arrears, and must therefore be construed as an application to reinstate respondent’s obligation, which unless suspended or otherwise terminated continues until the child reaches the age of 21 years. On consent in the instant proceeding respondent was ordered on September 23, 1982 to resume payment of support in the amount of $100 per month to be held in escrow by the support collection unit pending the outcome of this litigation.
Respondent’s cross motion for the immediate award of custody of the child is denied for lack of subject matter jurisdiction, as none of the criteria set forth in section 75-d of the Domestic Relations Law (Uniform Child Custody Jurisdiction Act) are present in the instant case. The child is not physically present in New York, and neither the child nor the child’s custodian has any significant connection with this State, nor, with the exception of the evidence concerning the lack of visitation with the father, does this court have substantial evidence concerning the child’s present or future care. For this court to attempt to exercise custody jurisdiction would, therefore, defeat the worthy *651 purposes of the act which are set forth in section 75-b of the Domestic Relations Law.
On the support question respondent asserts in this proceeding, as he has successfully asserted twice previously, that the continuing and unjustified denial of visitation with his son warrants suspension of his obligation to support the child. The Corporation Counsel, who is statutorily designated to represent the petitioner in USDL proceedings (Domestic Relations Law, § 31), was unable to offer any evidence to controvert respondent’s claim that the visitation rights awarded him by the 1976 divorce decree have been consistently thwarted.
Corporation Counsel asserts, however, that the recent decision of Griffin v Griffin (89 AD2d 310) precludes this court’s consideration of the denial of visitation to respondent in a USDL proceeding. This interpretation of Griffin is overly broad.
The instant case differs significantly from the Griffin case in that respondent in the instant case was awarded specific rights of visitation in the same divorce decree which awarded support. The “Settlement of Property Rights and Child Custody” which was incorporated into the divorce decree, states, “the Husband shall have visitation rights as specifically set out herein.” (Emphasis added.) The document then goes on to provide for the child to visit the father for Christmas every other year and for New Year’s on the alternate years, and during summer vacations and other school vacations upon one month’s notice to the wife. The specificity of these provisions is in sharp contrast to the award of “reasonable visitation” in Griffin. The court in the case at bar is well able to measure compliance with the clear and specific terms of visitation as provided in the divorce decree without imposing its own assessment of what is reasonable and good for the child upon another jurisdiction which may be in a far superior position to make Such an evaluation.
Having concluded that suspension of support is available in this USDL proceeding to the same extent as if both parties were within the State of New York, the court must now inquire whether that relief is appropriate on the facts of the instant case. Even, where the visitation right has *652 been infringed, suspension of the support obligation is not automatic but rather must be considered on a case-by-case basis. (Courten v Courten, 92 AD2d 579; Matter of Lee v De Haven, 87 AD2d 576.)
The reported cases in which the support obligation has been suspended fall into two categories: The first are cases in which the suspension is presumptively temporary because the court is enjoining the custodial parent from removing the child from the jurisdiction or simultaneously ordering the child’s return to the jurisdiction (cf. Weiss v Weiss, 52 NY2d 170; Strahl v Strahl, 66 AD2d 571, affd 49 NY2d 1036), or where further court proceedings were pending at the time of the suspension (cf. Deutsch v Deutsch, 57 AD2d 941; Cohen v Cohen, 56 AD2d 784). The second are cases in which only arrears are at issue, either because the custodial parent has voluntarily returned to the jurisdiction with the child (cf. Callender v Callender, 37 AD2d 360), or because the court is shifting the child’s custody to the parent whose visiting rights were infringed (cf. Courten v Courten, supra).
In a third line of cases the noncustodial parent’s obligation to support is not suspended but is modified downward as recompense for the additional expense incurred in visiting after the custodial parent “justifiably” relocates with the child in a distant State (cf. Matter of Lee v De Haven, supra; Smaller v Schnitzer, 85 AD2d 641; Giacopelli v Giacopelli, 62 AD2d 999).
The case before the court presents a fact pattern which is in some respects simpler but is ultimately more difficult. Respondent does not here contest the right of his former wife to relocate with the child to another State. The visitation provided for in the divorce decree, which was to be in blocks of time during school vacations rather than on isolated days or weekends, can be carried on almost as easily at a distance as it could if the parents lived in close proximity. Indeed, the parties may well have contemplated their geographic remoteness when arriving at their original agreement concerning visitation.
What respondent does assert, and petitioner does not deny, is the continuous refusal of the child’s mother and grandmother, petitioner herein, to make the child avail *653 able for visitation, notv/ithstanding the fact that respondent has purchased airplane tickets for the child on at least two occasions and has repeatedly offered to pay the cost of transportation in connection with the visitation. No explanation has been offered in this proceeding by the petitioner for this conduct. Thus, it is virtually conceded that the deprivation of visitation is without justification.
Most of the factors which the court in Giacopelli (supra) presented for consideration generally on the question of suspension of support are, therefore, not relevant here. We need not consider whether the distance effectively frustrated regular visitation or whether the decree expressly prohibited relocation or the reason behind the mother’s move to South Carolina. The very difficult question which is presented, however, is whether the court should enter an order, the effect of which is to leave the child indefinitely without financial support from the father. Since respondent’s cross motion for custody has been denied for the reasons stated above, and since this court is without authority otherwise to compel petitioner to honor the visitation provisions, this court by suspending support can at best formalize a stand-off.
Since the reported cases have not contemplated such a long-term deprivation of child support, there is little appellate guidance available to the court in this situation. In order to formulate appropriate criteria for the exercise of discretion, therefore, we first seek to understand the theoretical basis upon which suspension of support is premised.
In Callender v Callender (supra), one of the earliest cases to link suspension of support with denial of visitation, the decision rests squarely on contract theory. The separation agreement in that case having survived the divorce decree, the court found that its provisions for visitation and support were dependent contractual terms.
The usefulness of the contract theory is limited, however, to cases in which the support and visitation provisions were originally contained in the same agreement and the matter is raised before a court of general jurisdiction. The Family Court does not possess equity jurisdiction to set aside or modify separation agreements. (Matter of Brescia v Fitts, 56 NY2d 132.)
*654 Shortly after the Callender decision, and virtually without explanation, courts began to unfetter themselves from the contract theory. In Hudson v Hudson (97 Misc 2d 558), for example, after recapitulating the original reliance on contract principles the court. states, “The rule would appear to be the same where the obligations are set by a court.” (Supra, p 560.)
In Reilly v Reilly (100 Misc 2d 165), the court correctly observed that this linkage has served both coercive and punitive purposes. The majority of decisions suspending support appear to proceed from the punitive motivation, with some version of the “clean hands” doctrine as the perceived basis. As the Appellate Division, First Department, has said, “Plaintiff should not be permitted to enjoy the benefits of the divorce decree and, at the same time, frustrate its provisions granting the father the natural and most important right to see his minor children.” (Feuer v Feuer, 50 AD2d 772, 773.)
Denial of child support as a punishment for injury to the noncustodial parent is, however, inconsistent with the modern view of the child as a person in his own right Such decisions overlook the fact that child support is for the benefit of the child. Extrapolating from the perceptive analysis in Weiss v Weiss (52 NY2d 170, 175, supra) that “[visitation is a joint right of the noncustodial parent and of the child”, then it must equally be said that child support is a joint right of the custodial parent and the child. In particular, the Family Court, as a court of limited jurisdiction, can concern itself in child support cases only with the protection of the welfare of the child and cannot adjudicate disputes arising solely out of the wrongful conduct of one of the parents toward the other. (Matter of L. Pamela P. v Frank S., 58 NY2d 969.)
The only appropriate theory upon which to link suspension of child support with deprivation of visitation is, therefore, as an exercise of the court’s parens patriae function. (See Markus v Markus, 75 AD2d 747; Parker v Ford, 89 AD2d 806, as to the court’s parens patriae role with reference to visitation.) The child must be viewed as the joint holder of two rights, visitation and support, of which the more crucial is the right of visitation, since the visiting *655 parent fulfills a unique role in the child’s life which cannot be substituted or replaced.[1] The child, however, must have the assistance, or at least the acquiescence, of the custodial parent in order to exercise his right of visiting with the noncustodial parent. Thus, under certain circumstances the court may restrict the child’s right to support from the noncustodial parent, an obligation which may be met from other sources, in an effort to enforce the child’s more critically important right to visit the noncustodial parent.[2]
Such a step should be taken only in circumstances where less intrusive measures would prove ineffectual and where, on balance, the welfare of the child would thereby be promoted.
Two of the criteria enunciated in Giacopelli (62 AD2d 999, supra) should be considered here; first, the length of time between the frustration of visitation and the father’s complaint in court and, second, the extent of the father’s visitation prior to interference by the custodial parent. In addition, consideration should be given to the ability of the custodial parent to support the child at approximately the same standard previously maintained,[3] to whether the noncustodial parent made regular support payments prior to his problem with visitation, and to whether the noncus *656 todial parent has pursued such other legal means of enforcing visitation as are appropriate to his circumstances.[4]
Applying the foregoing criteria to the case at hand, we find that suspension of support is appropriate here. From exhibits annexed to respondent’s motion it appears that the frustration of respondent’s right of Visitation began even before the divorce was finalized. Respondent fully utilized the very limited amount of visitation permitted. In spite of the denial of visitation respondent was fairly regular in paying support until he suspended support on advice of counsel in 1977. Respondent was at that time residing in Tennessee and petitioner had moved with the child to Georgia.
The record is replete with correspondence between respondent and his former wife and their respective attorneys, in which respondent offered several possible compromise proposals aimed toward restoration of visitation or his assumption of custody of Jeffery. The child’s mother ultimately offered respondent “reasonable visitation * * * to see the child when he [the father] is in Columbia, South Carolina.” The matter was litigated within a year of the divorce, at which time respondent’s support obligation was suspended by the Honorable Martha Gibbell, Family Court Judge, March 8, 1978.
The petition itself reveals that the child is being supported adequately without the aid of public assistance. Question No. 20 of the petition, which asks whether public assistance is being given for the child, is answered in the negative, as is question No. 21, which asks whether it will become necessary to apply for public assistance if support from the respondent is not forthcoming.
In light of the difficulties in pursuing litigation in other jurisdictions the court is satisfied that respondent has made reasonable efforts to enforce visitation. During the years since the divorce, respondent has remarried, had another child, and successfully pursued a college degree, all of which have restricted his mobility, time and financial *657 resources. The child has been in at least three jurisdictions, Tennessee, Georgia and South Carolina since the disruption of the original marital home in New York. Under all the circumstances the conduct of respondent was justified.
Accordingly, the petition is dismissed. All moneys paid to the support collection unit by respondent pursuant to this proceeding are to be refunded to him.

. For this reason visitation may not be suspended solely for failure to pay support (Engrassia v Di Lullo, 89 AD2d 957).

. Legislative guidance on this issue would be most welcome. Section 241 of the Domestic Relations Law specifically authorizes suspension of alimony and maintenance where the custodial parent has failed to comply with visitation provisions, but is silent concerning child support. Although it has been five years since the court in Hudson v Hudson (97 Misc 2d 558) held that it was not the intent of the Legislature in thus enacting section 241 of the Domestic Relations Law to prohibit suspension of child support, clarifying legislation has not been passed. A bill, A1374, which would amend section 241 of the Domestic Relations Law specifically to authorize such suspension, is at present under consideration by the Judiciary Committee.

. It is unlikely that suspension of support would ever be appropriate where a child is or is about to become a public charge. Not only would such action have no coercive effect, Reilly v Reilly (100 Misc 2d 165), but would also run counter to strong public policy favoring the conservation of the public purse. (See Family Ct Act, § 415, which authorizes the court to impose support obligations on a spouse, parent, or a stepparent of a person who is, or is likely to become, in need of public assistance.) In Matter of Mercer v Mercer (26 AD2d 450), the Appellate Division, First Department, ruled, in part, that the husband must indemnify the then Department of Welfare for the support of the stepchild despite the absence of any proof that the child’s natural father was unable to furnish such support and despite the fact that only two years after their marriage the wife abandoned the husband. (See, also, Baird v Baird, 45 AD2d 930; Matter of Director of Child Support Enforcement Bur. v Fariello, 74 AD2d 905; Matter of Buscaglia v Tutko, 86 AD2d 974.)

. It should be noted that the instant case involves only prospective suspension of support. The appropriateness of cancellation of arrears is the subject of considerable controversy and bills are now pending in the Legislature which would limit the discretion of courts with regard to arrears.