OPINION OF THE COURT
John D. Capilli, J.
The parties herein were divorced pursuant to a judgment of *292 divorce, dated June 9, 1980, granted by the Supreme Court, State of New York, County of Queens. The judgment of divorce awarded custody of the infant issue of the marriage, Patricia, born December 28, 1971, to Marie G. The father, Guy L., was awarded "reasonable rights of visitation with the infant child. Reasonable rights of visitation shall be interpreted to mean at such time or times as the father may wish to visit with his daughter, provided it does not interfere with the child’s educational activities, health or other planned events.” The judgment of divorce further provided that the father was to pay to the mother the sum of $50 per week as and for the support of the child, Patricia.
By petition, sworn to on June 26, 1985 under index No. F-998-85, Marie G. seeks to enforce the support provisions of the judgment of divorce, alleging that Mr. L. has failed to comply with the judgment of divorce and is in arrears, as of the date of the petition, in the amount of $1,000. Ms. G. also filed a petition on June 26, 1985, under docket No. F-998-85, seeking increased child support based upon a change of circumstances.
By petition, sworn to on October 31, 1985 under docket No. V-1202-85, Guy L. seeks custody of the child, Patricia, alleging that "since the entry of the decree there has been a change of circumstances, in that Petitioner feels he can provide a more stable, loving environment for his daughter. Also, Petitioner would prefer to have the child reside with him rather than pay the Respondent any child support.” Mr. L. also filed an order to show cause, returnable January 2, 1986, under index No. F-998-85, seeking to suspend or decrease the support provisions of the parties’ judgment of divorce, based on a change of circumstances.
On January 2, 1986, this court entered a temporary order under docket No. V-1202-85, directing that Guy L. have visitation with Patricia on specified dates during January and February 1986. By writ of habeas corpus, returnable March 10, 1986, Mr. L. alleged that Patricia advised him not to visit her.
The proceedings were consolidated for trial. A hearing was conducted and concluded on July 15, 1986. Both parties were present and were represented by counsel. At the conclusion of the hearing, the court reserved decision, with leave to counsel to submit memoranda of law. Counsel for Guy L. submitted a memorandum of law on August 12, 1986 and counsel for Marie G. submitted a memorandum on August 19, 1986.
*293 The only issue presented to the court at the hearing was whether or not the court should suspend Mr. L.’s child support obligation, based upon allegations that Ms. G. intentionally interfered with his rights of visitation. No testimony or other evidence was offered to show that there has been a change of circumstances since the entry of the judgment of divorce and that Patricia’s best interests would be served by awarding custody to her father. No testimony or other evidence was offered regarding the parties’ respective financial circumstances.
Based upon all the proceedings heretofore held herein, the court makes the following findings of fact and conclusions of law:
In 1958, in Borax v Borax (4 NY2d 113), the Court of Appeals held that the child support and visitation provisions of a separation agreement were dependent. The court stated that "[t]he father’s right to see his children is tied into his covenant to provide agreed sums of money for their support.” (Supra, p 116; accord, see, Callender v Callender, 37 AD2d 360 [1st Dept 1971].) Thereafter, decisional law moved beyond the reliance on contract principles. It became generally recognized that court-decreed child support obligations were dependent upon the right to exercise court-ordered visitation. (See, e.g., Abraham v Abraham, 44 AD2d 675; Feuer v Feuer, 50 AD2d 772; Strahl v Strahl, 66 AD2d 571; Matter of Giacopelli v Giacopelli, 82 AD2d 806; Biamby v Biamby, 114 AD2d 830.) As recently as February of 1986, the Appellate Division, Second Department, in Miller v Miller (117 AD2d 719, 720) restated its holding in Giacopelli v Giacopelli (supra) that a mother " 'should not be permitted to enjoy the benefits of a support order, while at the same time frustrating the important rights of a father to see his children’ ”.
However, effective August 5, 1986, the Legislature of the State of New York amended Domestic Relations Law § 241. Prior to the recent amendment, this section, which was originally enacted in 1978, provided that: "When it appears to the satisfaction of the court that a custodial parent receiving alimony or maintenance pursuant to an order, judgment or decree of a court of competent jurisdiction has wrongfully interfered with or withheld visitation rights provided by such order, judgment or decree, the court in its discretion, may suspend such payments or cancel any arrears that may have accrued during the time that visitation rights have been or *294 are being interfered with or withheld.” In Hudson v Hudson (97 Misc 2d 558 [1978]), the court questioned whether the enactment of Domestic Relations Law § 241 was intended by the Legislature to overrule the decisional case law that held that child support obligations were dependent upon the right to exercise court-ordered visitation. The court held that, although the statute referred only to the suspension of alimony or maintenance and made no reference to child support, "the omission of any reference to child support in section 241 of the Domestic Relations Law by the Legislature cannot be construed to change the prior decisional law as to the cancellation of arrears or suspension of child support obligations in appropriate cases.” (Supra, pp 561-562.) In Matter of South Carolina Dept. of Social Servs. v James C. D. (119 Misc 2d 649, 655, n 2 [1983]), the court suspended a father’s obligation to pay child support, noting that "[although it has been five years since the court in Hudson v Hudson (97 Misc 2d 558) held that it was not the intent of the Legislature in thus enacting section 241 of the Domestic Relations Law to prohibit suspension of child support, clarifying legislation has not been passed.” The court further pointed out that a bill to amend the law to specifically provide for suspension of the obligation to pay child support in cases of intentional interference with court-ordered visitation rights was then presently under consideration by the Judiciary Committee.
Effective August 5, 1986, the Legislature did amend Domestic Relations Law § 241. However, rather than specifically providing for suspension of child support based upon withholding of visitation, the legislative amendment clearly prohibits the suspension of child support or the cancellation of child support arrears on that basis. As amended by the Laws of 1986 (ch 892), Domestic Relations Law § 241 now provides: "When it appears to the satisfaction of the court that a custodial parent receiving alimony or maintenance pursuant to an order, judgment or decree of a court of competent jurisdiction has wrongfully interfered with or withheld visitation rights provided by such order, judgment or decree, the court, in its discretion, may suspend such payments or cancel any arrears that may have accrued during the time visitation rights have been or are being interfered with or withheld. Nothing in this section shall constitute a defense in any court to an application to enforce payment of child support or grounds for the cancellation of arrears for child support.” (Provision eff Aug. 5, 1986; emphasis added.) Domestic Rela *295 tions Law § 244 and Family Court Act §§ 451 and 460 were also amended, effective August 5, 1986, to absolutely prohibit the reduction or annulment of accrued child support arrears.
In analyzing the relevant case law in 1983, the court in South Carolina Dept. of Social Servs. v James C. D. (supra) determined that the proposition that a child support obligation and visitation rights are dependent is based not on a theory of contract rights as in Borax v Borax (supra) and should not be enforced as a punitive measure as punishment to the custodial parent for injury done to the noncustodial parent. The court explained that support and visitation were linked on the basis that it was the court’s role to protect the welfare and best interests of a child. The child not only has a right to be supported by the noncustodial parent but, as set forth in Weiss v Weiss (52 NY2d 170), a joint right of visitation with the noncustodial parent. The court, in South Carolina Dept. of Social Servs. v James C. D., determined that of these two rights the right of visitation is the more crucial and that, therefore, under certain circumstances child support may be suspended in an effort to enforce the "more critically important right to visit the noncustodial parent.” (Supra, p 655.)
The Legislature has made it clear by virtue of the aforementioned legislative amendments, effective August 5, 1986, that under the law of the State of New York the right to be supported by the noncustodial parent is more compelling than the joint right of visitation and that intentional interference with court-ordered visitation rights is not a defense to an application to enforce payment of child support.
It is arguable that the amendment effective August 5, 1986 prospectively prohibits this court from suspending child support payments based on intentional interference with visitation and that Mr. L. may have been entitled, by virtue of case law, to a suspension of his support obligation and/or an annulment or reduction of child support arrears which accrued prior to the effective date of the amendment. However, the suspension, reduction or annulment of child support prior to the prohibitory legislation was to be granted in the court’s discretion consistent with fostering visitation in the best interests of the child. Based upon the unequivocal legislative determination that the child’s right to be supported by the noncustodial parent is more compelling than the child’s and the parents’ joint right of visitation, this court declines to determine the merits of Mr. L.’s defense of intentional interference with his visitation rights prior to August 5,1986. Even *296 if the court were to find that Ms. G. had interfered with visitation prior to August 5, 1986, the court, in its discretion, would not suspend child support, in view of the clear legislative statement that to do so is contrary to the best interests of the child.
Accordingly, Mr. L.’s defense of intentional interference with his right to visit his daughter, Patricia, is dismissed. Ms. G.’s petitions to enforce the order of another court and to modify the order of another court and Mr. L.’s petition to modify the order of another court, all filed under docket No. F-998-85, are referred to a hearing examiner for a full hearing.
Regarding Mr. L.’s petition for custody of Patricia and the writ of habeas corpus, Mr. L. failed to establish that a change of custody would be in the child’s best interests. Visitation is, however, a component of custody and Mr. L. should be permitted to attempt to enforce his right of visitation, despite the legislative prohibition against suspension of child support as a means to enforce visitation.
The court directs that the Nassau County Department of Probation conduct a complete investigation and report, including psychiatric and psychological testing of the parties and other persons with whom this proceeding is concerned, on the issue of visitation between Patricia and her father.
Patricia Doyle is appointed to act as Law Guardian for the child, Patricia, and the clerk of the court is directed to notify the Law Guardian of the appointment.
The petition and writ under docket No. V-1202-85 are adjourned to December 5, 1986, pending the probation investigation, for a further hearing on the issue of visitation.